T.C. Memo. 1997-223


UNITED STATES TAX COURT


SCOTT C. AND PATRICIA A. SIMPSON, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 23537-95.                    Filed May 12, 1997.


Scott C. and Patricia A. Simpson, pro sese.

<u>Bryan E. Sladek</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


FOLEY, <u>Judge</u>:  By notice dated August 17, 1995, respondent determined deficiencies in petitioners' Federal income taxes and an accuracy-related penalty as follows:

| Year | Deficiency | Penalty Sec. 6662(a) |
|------|------------|----------------------|
| 1992 | $11,255 | $108 |

1993          16,342                    --

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

After concessions by petitioners, the issues for decision are as follows:

1.  Whether petitioners, pursuant to section 162(a), are entitled to deduct certain expenses as ordinary and necessary business expenses.  We hold that petitioners are not so entitled.

2.  Whether petitioners, pursuant to section 6662(a), are liable for an accuracy-related penalty.  We hold that petitioners are liable.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found.  At the time the petition was filed, petitioners resided in Antioch, California.

During the years in issue, petitioners operated a day-care service in their home.  In addition to their own children, petitioners cared for one child in 1992 and four children in 1993.  During 1993, petitioners also operated from their home Simpson & Associates, a business that marketed Amway Corp. products, and Equity Investments, a business that sold mortgage reduction plans.  During the years in issue, Scott Simpson was

also employed as a technical specialist for American Stores, a chain of grocery stores.

Petitioners filed their 1992 and 1993 Federal income tax returns in a timely manner. On the returns, petitioners attached Schedule C (Profit or Loss From Business) and reported on those schedules gross income of $321 for 1992 and $7,348 for 1993. Petitioners also reported, on those schedules, expenses relating to advertising, car and truck expenses, insurance, interest, legal and professional services, office expenses, rent or lease payments, repairs and maintenance, supplies, taxes and licenses, travel, meals and entertainment, and utilities. These expenses totaled $42,600 for 1992 and $63,733 for 1993.

Petitioners deducted supply expenses of $10,994 for 1992 and $16,697 for 1993. These expenses included: $2,159.90 for a wide-screen television and an extended warranty; $1,975 for a satellite television system; $344.68 for a television sound system; $658 for a video cassette recorder (VCR) and an extended warranty; $848.95 for a cross-country ski machine; over $7,000 for groceries; and numerous payments to wineries.

Petitioners deducted legal and professional service expenses of $5,018 for 1992 and $9,048 for 1993. These expenses included the cost of several home improvements (e.g., landscaping, a deck, and a fence around a swimming pool) and the cost of items relating to the satellite television system, a water purifier, and pest control.

Petitioners deducted car and truck expenses of $8,127 for 1992 and $3,836 for 1993. These expenses related to mileage, insurance, and repairs for three vehicles. With respect to one of the vehicles, petitioners also deducted lease payments of $4,088 for 1992 and $4,088 1993.

Petitioners deducted meal and entertainment expenses of $6,474 for 1992 and $14,130 for 1993. These expenses included the cost of personal meals and trips (e.g., a trip to the amusement park Pixieland), as well as $2,000 for video rentals.

Petitioners deducted repair and maintenance expenses of $1,079 for 1992 and $56 for 1993. These expenses related to television repairs, VCR repairs, pool chemicals, lawnmower parts, and the cost of building a stairwell gate.

Petitioners deducted utility expenses of $4,038 for 1992 and $4,328 for 1993. These expenses related to cable television, gas, electricity, telephone service, garbage removal, and water.

Respondent disallowed all of the deductions relating to legal and professional, rent or lease, supply, and meal and entertainment expenses. Respondent also disallowed the 1992 deductions for car and truck, repair and maintenance, and utility expenses, as well as the 1993 deductions for interest and travel expenses. The deductions disallowed by respondent totaled $39,818 for 1992 and $52,656 for 1993. Respondent determined that petitioners were liable for deficiencies of $11,255 for 1992 and $16,342 for 1993. Respondent also determined that for 1993

petitioners were liable, pursuant to section 6662(a), for an accuracy-related penalty of $108.


OPINION

## I. Trade or Business Expense Deductions

Section 162(a) permits the deduction of expenses paid or incurred during the taxable year in carrying on a trade or business. To be deductible, the expenditure must be an ordinary and necessary expenditure of the business. Sec. 162(a); Welch v. Helvering, 290 U.S. 111, 113 (1933). An expense is ordinary if it is customary or usual within a particular trade, business, or industry. Deputy v. Du Pont, 308 U.S. 488, 495 (1940). An expense is necessary if it is appropriate and helpful for the business. Commissioner v. Heininger, 320 U.S. 467, 471 (1943). Section 262 disallows deductions for personal, living, or family expenses. Petitioners bear the burden of proving their entitlement to the deductions. Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).

During the years in issue, petitioners' day-care service generated $7,669 in revenue while incurring $106,333 in expenses. On the whole, it is readily apparent that petitioners have used their day-care service as a means to deduct virtually all of their personal expenses. For example, petitioners in 1993 deducted the cost of 632 meals as business expenses. Mr. Simpson

testified about petitioners' practice of deducting the cost of meals as "planning" sessions. He stated that petitioners went to restaurants to plan their weekly activities for the day-care service. He also testified that petitioners ate alone during a majority of these meals. Petitioners also deducted the cost of personal meals as client "prospecting" activities. Mr. Simpson provided the Court with the following explanation for such deductions:

> THE WITNESS: Meals and entertainment was basically that; we entertained people. We went -- we would go to parks and see people with the children. We would walk up to and start talking to them, become -- just be friendly, Your Honor, and we would, you know, take them out to dinner and discuss -- in '92, especially, basically, what they were looking for in a child care so we could better cater to the needs of what people wanted in child care, because we basically didn't have any idea, you know.

> \*  \*  \*  \*  \*  \*  \*

> THE COURT: $6,000 worth of meals in '92, and $14,000 worth of meals in '93?

> THE WITNESS: Well, $14,000 is -- we added something to it instead of just meals, Your Honor. It's also meals and entertainment, and we'd line itemed in there I think it's approximately $2,000 worth of video rentals for the year of '93, for, you know, watching Disney and the things that we had to rent movies and things of that nature.

> THE COURT: You rented $2,000 worth of videos?

> THE WITNESS: Yes, Your Honor, it goes pretty fast. You know, you rent two or three videos a day or every other day, it adds up over a year's time, yes.
> \* \* \*

> \*  \*  \*  \*  \*  \*  \*

THE COURT: Seems to me it would have been cheaper to go out and buy the videos, than to spend $2,000 renting them.

THE WITNESS: Well, we ended up going out and buying them, too, Your Honor.

In addition to the cost of the 632 meals, petitioners in 1993 deducted as supplies $7,000 worth of groceries. To justify this deduction, Mr. Simpson testified that petitioners provided children in their care with four meals a day. Mr. Simpson admitted, however, that his family consumed some of the groceries. Furthermore, Mr. Simpson stated that petitioners did not maintain records delineating the groceries that were exclusively used for the day-care service. Therefore, even if some of the groceries were attributable to the day-care service, petitioners cannot establish the amount devoted to that purpose. In essence, petitioners want the Government to subsidize their daily food consumption.

Petitioners' pattern of deducting personal expenditures was not limited to meals and entertainment. Petitioners also deducted supply expenses of $10,994 for 1992 and $16,697 for 1993. These deductions included expenditures for a VCR, a wide-screen television, a satellite television system, and a cross-country ski machine. Petitioners contend that these expenses were necessary startup costs associated with the day-care service. Petitioners have failed, however, to establish a

sufficient nexus between their day-care service and these supplies.

Petitioners also deducted the cost of several home improvements, including landscaping, a deck, and a fence around their pool.  Petitioners have failed, however, to establish that these expenditures were ordinary and necessary for their businesses.  Even if petitioners could establish that these expenditures were ordinary and necessary, they are not currently deductible.  Instead, the expenditures, pursuant to section 263(a), would have to be capitalized.

Petitioners also deducted expenses relating to cable television, gas, electricity, telephone service, garbage removal, and water.  The deduction for telephone service is expressly prohibited by section 262(b).  The remaining utility expenses are deductible, subject to the limitations of section 280A(c)(4).  Section 280A(a) generally prohibits deductions attributable to a dwelling unit that is used as a residence.  Section 280A(c)(4) provides an exception for the trade or business of providing day-care services.  The exception is limited, however, by a special allocation formula.  See sec. 280A(c)(4)(C).  Petitioners have failed to provide sufficient evidence to make the allocation required by section 280A(c)(4).  Therefore, the remaining utility expenses are not deductible.

In essence, petitioners have failed to establish that any of the disallowed expenditures were ordinary and necessary for their

businesses.  Accordingly, we hold that petitioners are not entitled to deduct the expenses as ordinary and necessary business expenses.

## II.  Accuracy-Related Penalty for Negligence

Section 6662(a) imposes a penalty in an amount equal to 20 percent of the portion of any underpayment to which the section applies.  The section applies to, among other items, the portion of an underpayment attributable to negligence or disregard of the rules or regulations.  Sec. 6662(b)(1).  Petitioners did not at trial or in their brief dispute their liability for the accuracy-related penalty for negligence.  As a result, petitioners have failed to carry their burden of proof and are liable for the penalty.

We have considered the other arguments made by the parties and found them to be either irrelevant or without merit.

To reflect concessions by the parties,

Decision will be entered under Rule 155.